In re Blackburn.

*In re* LYDIA BLACKBURN, An Infant.

### Kansas City Court of Appeals, June 2, 1890.

1. **Parent and Child**: CUSTODY OF CHILD : ITS WELL-BEING. The custody of children cannot be awarded by any fixed and inflexible rules, as may be done where mere rights of property are involved. The discretion of the court will be exercised in the light of some general rules, and yet in many cases these rules seem ignored in the effort of the courts to do the best thing possible for helpless children, whose well-being is the *polar star* by which the courts are guided on the way to decisions.

2. ———: EFFECT OF DIVORCE : DEATH OF SUCCESSFUL PARTY. A decree of divorce in favor of the wife, and awarding her the custody of the infant daughter, had the effect to destroy the priority of the father's right to such custody and invest the same in the mother, while she lived ; but, on her death, the father's right was relieved of that paramount right of the mother ; and the decree does not operate as a conclusive bar to the father's right.

3. ———: ———: CUSTODY NOT TRANSMITTED. While the decree of divorce gave the custody to the mother, such trust could not be by her transmitted at her death to another, even by contract.

4. **Evidence**: DECREE OF DIVORCE AND CONDUCT. The record and judgment for divorce is as between others than the parties thereto conclusive evidence only as to the matrimonial status of the parties ; still such record and proceedings together with the conduct of the parties may amount to an admission of the facts charged in such record.

5. **Parent and Child**: CUSTODY OF CHILD : REVIEW OF EVIDENCE. The evidence in this case reviewed and found such as to warrant the court in regarding any present change in the custody of a little girl left by a divorced mother at her death in the custody of her maternal grandparents, as an experiment, and to admonish the court to "let well enough alone."

*Original Proceeding by Habeas Corpus.*

INFANT REMANDED.

In re Blackburn.

*Samuel Boyd* and *Anderson & Sebree*, for appellant.

(1) None of the evidence relative to the request of the deceased, Lizzie Blackburn, to her parents to keep her child after her death is admissible. Such request is irrelevant, as any arrangement of that kind under our law is void. In the cases where such arrangements have been admitted in evidence, the reason for their admission is that the arrangement was made by the parent who was a party to the suit, and is relevant on the ground that it is a circumstance touching his affection for the child, which is entitled to be considered with other circumstances of the case. In this case, the arrangement was not made with Marshall Blackburn, the petitioner, and hence it can have no bearing in the case. (2) The decree of divorce, in which the custody of the child was awarded to the mother, only had force and effect during her life. As between Marshall Blackburn, the petitioner, and anyone else than his wife, there was no adjudication. The mother of the child is now dead, and the question, therefore, is a new one, so far as that decree is concerned, the contest now being between the petitioner and the respondent. *State v. Reuff*, 29 W. Va. 751; s. c., 6 Am. St. Rep. 462; *Miller v. Wallace*, 76 Ga. 479; s. c., 2 Am. St. Rep. 48; *Bryan v. Lyon*, 104 Ind. (54 Am. Rep.) 227; *Gilley v. Gilley*, 79 Maine, 292. (3) In a contest by the father for the possession of his infant child, "it is the duty of the court to award the person of the infant to the custody of the father, unless it is made manifest to the court that the father, for some reason, is unfit or incompetent to take charge of it; or unless the welfare of the child itself, for some special or extraordinary reason, demands a different disposition of it at the hands of the court." *In the Matter of Scarritt*, 76 Mo. 565; *Weir v. Marley*, 12 S. W. Rep. 798, s. c., 99 Mo. 484.

(4) The presumption of law is that the interest of the child is to be in the custody of the parent. The statute of this state recognizes this presumption. R. S., sec. 5279. And under the statute, before another can be substituted in the place of the father as guardian of the child, the father must first be adjudged to be incompetent or unfit for the duties of guardianship. R. S., sec. 5281. (5) Such being the law, the claim of the respondent for the custody of this child must fail. By nature and by law there rests upon the father the duty to care for, support and nurture this child; such duty rests on no one else. We submit that while this child is yet in its early infancy, and before its affections have become strongly fixed, it ought to be placed with its father whose duty and inclination, whose age and situation, fit him to care for, cherish and love it, to watch over and rear it better than any other.

*Dean D. Duggins* and *Karnes, Holmes & Krauthoff*, for respondent.

(1) The divorce decree is a bar to any claim by the petitioner to the custody of the infant in question. Where a decree of divorce is granted for the cruel treatment of the husband, giving the custody of the infant child absolutely to its mother, it takes away *ipso facto* all control of the father over the child. It nullifies, or at least neutralizes, the rule of the common law, and takes from the father all power thereafter over the child. By the decree, the infant is no longer the child of the divorced father, but is entirely under the control of the mother until it arrives at the age of majority. The wife at her death has the right to commit the child to a competent guardian, whose right of custody will be upheld against the father. *Wilkinson v. Deming*, 80 Ill. 342 ; *Cocke v. Hannam*, 39 Miss. 423, 438, 439 ; *Miner v. Miner*, 11 Ill. 43, 50 ; *State v. Bechdel*, 37 Minn. 360 ; *Burritt v. Burritt*, 29 Barb. 124, 129 ;

*Hewitt v. Long*, 76 Ill. 399, 409 ; *Harvey v. Lane*, 66 Me. 536 ; *Husband v. Husband*, 67 Ind. 583.; *Johnson v. Onstead*, 42 N. W. Rep. (Mich.) 62. The doctrine of *res adjudicata* applies in all its force to a proper order affecting the custody of a child. *Weir v. Marley*, 12 S. W. Rep. 798, 799 ; s. c., 99 Mo. 484 ; *State ex rel. v. Bratton*, 15 Am. Law Rev. (N. S.) 359, 365, 366 (Sup. Ct. Del., 1876, WALES, J.). (2) The rule is clear that on a divorce of the wife for the fault of the husband, the common-law, *prima facie* right of the husband to the custody of the children is neutralized and overcome, and will no longer be recognized. All the cases agree to this, even where the conclusive effect of the decree is not declared. *Wand v. Wand*, 14 Cal. 512, 515, 516 ; *Green v. Green*, 52 Iowa, 403 ; *Welch v. Welch*, 33 Wis. 534, 541 ; *Bennett v. Bennett*, 1 Deady, 299, 303, 304 ; *Hoffman v. Hoffman*, 15 Ohio St. 427, 436 ; *Cocke v. Hannam*, 39 Miss. 423, 438, 439 ; 2 Bish. Mar. & Div. [6 Ed.] secs. 530–546 ; *State v. Smith*, 6 Greenl. 400, 405 ; *Foster v. Alston*, 6 How. (Miss.) 406, 461 ; Schoul. Dom. Rel. [3 Ed.] sec. 248 ; *In re Pray*, 60 How. Pr. 194 ; Church on Habeas Corpus, sec. 441 ; 2 White & Tudor's Lead. Cas. Eq. [4 Am. Ed.] 1522 ; *People v. Brooks*, 33 Barb. 85. In any event the prevailing rule at this day attaches little importance to the so-called, common-law right of the father. " The welfare of the child, and not the technical legal right, is the criterion by which to determine to whom the custody of a child belongs. * *, * The paramount consideration is, what is best for the welfare and happiness of the child itself." *In re Scarritt*, 76 Mo. 565, 584, 586 ; 2 Bish. Mar. & Div. [6 Ed.] sec. 526 ; Schouler Dom. Rel. [3 Ed.] secs. 248, 251 ; Church on Habeas Corpus, secs. 446–448 ; *Hewitt v. Long*, 76 Ill. 399, 418. It is to be remembered that the same general rules govern this question, whether it arises as incident to a divorce suit, in equity or on a *habeas corpus* proceeding. Even if the rules already

quoted do not completely bar the claim of the petitioner, the most that can be accorded to him is to leave his claims and rights upon equal grounds with those of respondent. They certainly can be no higher, in view of the neutralizing effect of the divorce decree. "A parent's right to the custody of a child is not like the right of property, an absolute and uncontrollable right." *Chapsky v. Wood*, 26 Kan. 650, 652 ; *United States v. Greene*, 3 Mason, 482, 485 ( STORY, J.) ; *Foster v. Alston*, 6 How. ( Miss.) 406, 461 ; *Mercien v. People*, 25 Wend. 64, 92, *et seq. ; Clark v. Boyer*, 32 Ohio St. 299, 305. Even if there were room for doubt, the court will not change an existing satisfactory custody, the rule in such cases being widely different from the one governing cases where the father has the custody and is sought to be deprived of it. Church on Habeas Corpus, sec. 426 ; *Chapsky v. Wood*, 26 Kan. 650, 656 ; *Commonwealth v. Drummond*, 34 Am. Rep. 699 ; *Coffee v. Black*, 82 Va. 567, 572. Will the best interests of the child be subserved by changing its custody ? In case of doubt, the court will not experiment on a change. *Duke of Beaufort v. Berty*, 1 P. Wms. 703 ; Schouler Dom. Rel. [3 Ed.] sec. 248, p. 339, note 1 ; *In re Pray*, 60 How. Pr. 194 ; *Drumb v. Keen*, 57 Iowa, 435 ; *In re Waldron*, 13 Johns. 417, 419 ; *Wand v. Wand*, 14 Cal. 512, 515, 516 ; *McShan v. McShan*, 56 Miss. 413, 416, 417, 418 ; *Cocke v. Hannam*, 39 Miss. 423, 440, 441, 442 ; *Gradenhire v. Hinds*, 1 Head, 402, 410 ; *McKim v. McKim*, 12 R. I. 462, 463, 464 ; *People v. Porter*, 23 Ill. 196 ; *Washaw v. Gimble*, 50 Ark. 351, 355 ; *In the Matter of O'Neal*, 3 Am. Law Rev. 578, 579, 580 ; *Pool v. Gott*, quoted, 76 Mo. 590 ; *In the Matter of Bort*, 25 Kan. 308, 311 ; *Chapsky v. Wood*, 26 Kan. 650, 653 ; *In re Beckwith*, 23 Pac. Rep. 164 ; *In re Bullen*, 28 Kan. 781, 787 ; *In re Stockman*, 38 N. W. Rep. 876, 880 ; *Merritt v. Swinley*, 82 Va. 433, 437, *et seq.; Jones v. Darnall*, 103 Ind. 569, 573, 574 ; *Sturtevant v. State*, 15 Neb. 459 ; *Corrie v. Corrie*, 42

Mich. 509 ; *Lyons v. Blenkin*, 1 Jacobs Ch. 245, 262; *Lusk v. Lusk*, 28 Mo. 91, 93 ; *Richards v. Collins*, 45 N. J. Eq. 283, 287, 288 ; *Sheens v. Stern*, 43 N. W. Rep. 728 ; *Hewitt v. Long*, 76 Ill. 399, 403 ; *Miner v. Miner*, 11 Ill. 43, 51 ; *State v. Libbey*, 44 N. H. 321.

GILL, J.—This is a proceeding by writ of *habeas corpus*, instituted by Marshall Blackburn to recover the possession of his child Lydia, now in the custody of Carroll Logsdon and wife, who are the maternal grandparents of the said Lydia. In August, 1884, Marshall Blackburn and Lizzie Logsdon were married. This union resulted in the birth of Lydia ( the subject of this unhappy controversy ) in September, 1885. The young couple continued to live together as husband and wife, at or near the town of Blackburn, Saline county, Missouri, till in January, 1887, when a temporary separation occurred. After an absence of ten days, however, Mrs. Blackburn returned and resided with her husband until the month of May following, when a second separation transpired, Mrs. Blackburn, with her infant child going back to her father's home some few miles distant. This final separation took place, as already stated, May, 1887. In January, 1888, the wife commenced an action for divorce, alleging cruel and barbarous treatment, such as to endanger her life, and to render her condition intolerable. Mr. Blackburn, in due season, filed his answer, consisting of a general denial of the charges made. The cause was heard by the circuit court at the October term, 1888, and judgment for divorce in favor of the wife rendered, giving her, too, the custody of her infant child, and fixing the alimony at five hundred dollars. It may be as well to state here that Blackburn made no active opposition at the trial of the cause, and that the amount of the alimony was fixed by agreement. In January, 1890, Mrs. Blackburn, the divorced wife, died at her father's house in Saline county, where she

had continued to live as a member of Mr. Logsdon's family from the day she left Blackburn, in May, 1887. During all this time this divorced mother and infant child had been cared for and supported by Mr. and Mrs. Logsdon, without any assistance whatever from the father who now seeks the custody of the little girl, the one of all most interested in this contest. · For the present this appears all that it is necessary to state, as regards the facts giving rise to this controversy. Other matters will be mentioned later on.

II.   Contests of this nature are the most embarrassing with which courts have to deal. This comes not alone because they have to do with ties of relationship and intimate association, but because as well the judge must, to some extent, realize a partial and painful responsibility for the future course of a human being. Cases of this kind, too, rest, more than all others, upon the facts and circumstances of each particular controversy. Custody of children cannot be awarded by any fixed and inflexible rules, as may be done where mere rights of property are involved. The discretion of the court, it is true, will be exercised in the light of some general rules, and yet in may cases these seem ignored in the efforts óf courts to do the best thing possible for helpless children. For example, it is well understood that the father is entitled to the custody and control of his infant children, and yet, if a dissolution of the marriage is brought about, the courts, if for the best interests of such children, do not hesitate to award the same to the mother, or, in case of her unfitness, will even give the children over to the keeping of third parties. Hence it is said that the *polar star*, by which the courts are guided on the way to decisions in this character of cases, is the well-being of the infant. So, then, we may say that, primarily, the right to the possession of little Lydia Blackburn is with her fater. He has a *prima facie* right to her custody, based upon the reasonable

ground, that, being bound in law for her support and education, he should also have possession and control in order to carry out this obligation to maintain, rear and educate her. Respondent Logsdon (Lydia's grandfather) bases his claim to continue in the care and custody of the child on the grounds : *First.* That, by the decree of divorce, granted in case of *Blackburn v. Blackburn,* in 1888, the father, Marshall Blackburn, was forever barred of any further right or claim of custody, and that, as the divorced mother on her death bed intrusted the child's keeping with Mr. and Mrs. Logsdon, the petitioner father has no rightful claim which he can now enforce ; and, *second,* it is claimed that Mr. Blackburn is an unfit person to rear, educate and control his own child.

Counsel seem to agree ( and we think rightfully ) that during the lifetime of Lydia's mother, after the divorce in 1888 to her death in January, 1890, she, the mother, was entitled to the exclusive custody of the child, that is, that by the decree of divorce, and custody awarded to the mother, Mr. Blackburn's paramount right as father was postponed to that of Mrs. Blackburn. But respondent's counsel go further, and insist that this divorce, for fault of the husband, *ipso facto,* abrogated, or annulled Blackburn's right of custody for all time, even after death of the divorced wife ; and that he now occupies no more favorable status than any stranger in blood, or one in nowise connected with the child's existence. We cannot give our approval to this position. Section 4505, Revised Statutes, 1889, provides that, "When a divorce shall be adjudged, the court shall make such order touching * * * the care, custody and maintenance of the children, or any of them, as, from the circumstances of the parties and the nature of the case, shall be reasonable," etc. By authority of this statute, the court, awarding the care and custody of the infant Lydia ( then perhaps scarcely

weaned from its mother's breast), doubtless considered as between husband and wife the father's paramount right should yield to " the circumstances of the parties and the nature of the case," and, therefore ( if for no other reason ), made the order referred to. This judgment for custody of the child had relation only to the circumstances as they then were. It was not the object of that decree to part forever the father and child, or, as expressed by the court in a case cited, it was not intended "to bastardize" the infant. *Taylor v. Jeter*, 33 Ga. 195 ; *Bryan v. Lyon,* 104 Ind. 234 ; *State ex rel. v. Reuff*, 29 W. Va. 751. We hold, then, that the judgment of the court in the divorce case does not operate as a conclusive bar to the petitioner's rights, as father, to the custody of the infant Lydia. It had only that effect as between Blackburn and his divorced wife, while she lived. By the rules of common law this father's right of custody was paramount to that of the mother, but the divorce judgment destroyed this priority of right in the father and invested the same in the mother. She is now dead, and the father's right of custody has been relieved of that paramount right of the mother. His is the only claim ( as parent ) now to be considered. In arriving at a conclusion on this branch of the case we are not unmindful of the respectable authority tending to sustain respondent's contention, prominent among which may be named the case from Delaware ( *Lynch v. Bratton*, 15 Am. L. Rev. 359). However, in quite all the cases cited ( with perhaps the exception only of *Lynch v. Bratton, supra* ), the controversy was between the divorced father and mother ( both living ), and there the integrity of the former decree of divorce, with award of custody of the children, was maintained, and held to be a conclusive bar to the father's common-law rights. In some of such cases the judges do say that the divorce of the wife *for the fault of the husband abrogates* and *annuls* his former superior right of custody of his children. But I apprehend

this only means to declare, in such an event, a superior right in the mother during her life, not a total extinguishment of the father's paternal authority in case of the mother's death. While the judgment in divorce gave the guardianship of the child in controversy to Mrs. Blackburn during her life, it is yet quite obvious that this trust could not be by her transmitted at her death to another. *Taylor v. Jeter, supra.* Hence the request of the dying mother that the child should remain in the keeping of her father and mother, and should not be intrusted to Mr. Blackburn, cannot be used to strengthen the claim now made by respondent Logsdon. Regarded even in the light of an agreement, or contract, between Mrs. Blackburn, the legal custodian at the time, and Mr. Logsdon, it would not be enforced, as repeatedly ruled in this state. *In re Scarritt,* 76 Mo. 565; *Weir v. Marley,* 12 S. W. Rep. (Mo. Sup. Ct.) 798; s. c., 99 Mo. 484.

II. Conceding now a *prima facie* right of custody in the father, the next and most important inquiry is, are we justified, in view of the circumstances, in taking this little girl from the care and possession of respondent, and giving it over to petitioner. This right of the father is not absolute, but is only such as must yield to the future well-being of the child. It is not the personal gratification of a parent or grandparents that we are here to serve. We seek, in the light of the information at our command, the greatest good for this lovely, helpless infant. We find her now ( where she has been continuously for three years ) in the care and keeping of most estimable people. Mr. and Mrs. Logsdon come into this court with characters, apparently without blemish, popular with their neighbors, and very warmly attached to this little one. They seem not only well to do financially, but equipped with every disposition and means to serve the future rearing of the child. Indeed, Lydia has now a model home, where every substantial

comfort is found and where the earnest care and solic-
itude of loving, fond relationship awaits her. The child
has, through years of an intimate companionship, become
as one of the Logsdon family, and to her the father,
Blackburn, is an entire stranger. She has no knowledge
of him. He has never visited her, or paid any attention
to her support or training. Likely this grows out of an
estrangement existing between the Logsdons and Black-
burn. Still so it is, and we must now accept that situa-
tion as we find it. As to Blackburn, respondent's
counsel have, in their zeal for their client, brought
forward matters intended to shade his character, which
we think scarcely deserve to be used against him.
Courts do not award a father's children to the custody
of third parties because of his religious convictions ( or
for *want* of religious convictions ), nor is it proper to
determine here as to whether or not Mr. Blackburn was
at fault in swearing at times, or did wrong engaging in
an occasional game with friends where money was at
stake. If, by reason of habitual gambling, his family
was neglected, then such neglect might be urged against
him as a fit person as guardian of his child. Mr. Black-
burn is at present engaged in a small mercantile busi-
ness at his town. He comes, it seems, from a most
respectable parentage. His widowed mother ( a refined
and cultured lady, and with whom he lives ) comes
indorsed as one fit to rear and educate the child in ques-
tion ( and she expresses a willingness so to do ). Mr.
Blackburn is, too, regarded by his neighbors as a gentle-
man of honor and fair dealing. We are bound, how-
ever, to find, in the light of the testimony adduced, that
he is possessed of a most ungovernable temper, that he
treated the mother of this child in a very cruel and
barbarous manner whilst they lived together as husband
and wife ; that such treatment began shortly after their
marriage and was repeated from time to time till their
final separation in May, 1887, when the girl wife sought

refuge in the home of her father.   Evidence of these
facts abounds in the depositions produced.   When, in
January, 1887, the wife and mother first separated from
him, he admitted the charges preferred and promised
reformation if the wife would return to him, and, it
seems, entered into a written agreement to that effect.
The wife returned to him, but the cruel treatment was
repeated until she fled the second and last time, and
sought protection of Mr. Logsdon.   Shortly thereafter
Mrs. Blackburn instituted a divorce proceeding, charg-
ing in detail this extreme cruelty and abuse, and when
the cause was called for trial he walked from the court
room, and permitted the wife to make proof of all the
charges thus made ( and of which he was fully advised )
without uttering one word in defense.   While this record
and judgment for divorce is as between others than the
parties thereto conclusive evidence only as to the *matri-
monial status* of Mr. and Mrs. Blackburn, and not of
all the matters therein recited (1 Greenl. Ev., secs.
525, 538, *et seq.*; 3 Gray, 387 ), still the record and pro-
ceedings of that suit, attended by Blackburn's conduct,
may be regarded in the nature of an admission of the
facts there charged.   1 Greenl. Ev., secs. 527, 195, 196,
197 ; 33 Wis. 542 ; 55 Mo. 523 ; 33 Me. 374 ; and *Ball v.
Independence*, lately decided by us, *ante*, p. 469.
We care not here to mention in detail the charges made,
and ( in the court's judgment ) sustained in that divorce
proceeding.   It is sufficient to say, however, that the
trial court was apparently justified in finding and
declaring that Blackburn's conduct towards his wife
was so cruel and barbarous as to endanger her life and
such as to render her condition, as such wife, intolera-
ble.   Whatever, then, may be the merits of Mr. Black-
burn as to integrity and just dealing with his neighbors,
his conduct towards the mother of this child was such
as to impeach his fitness as its custodian, or at least to
cast suspicion upon the propriety of a change in its

present relations and surroundings. A cruel and brutal husband might easily develop into a like unfeeling and unfaithful father. As at present situated this little girl has about her everything that tends to develop the little life into honored and useful womanhood. Proper support and education are within easy reach. Loving, considerate care attends her wants. This father has no home of his own, but must rely on his mother, to whom the child is a stranger. We must be understood, however, to cast no possible reflection on the good name of the elder Mrs. Blackburn. She is beyond question a most excellent lady. Yet there are no ties of companionship between her and her son's child, while, as between Mr. and Mrs. Logsdon and little Lydia, the warmest affection (grown up from continual contact since the separation of father and mother) exists. In short, we regard any present change in the custody of Lydia as an experiment, to some extent. "Let well enough alone," said Judge BREWER in a similar case. 26 Kan. 656. And quoting from the apt words of another court, we must say of the subject of this controversy, "She is happy now and all her surroundings are suitable and safe, and *all is assured*. The proposed change is but an experiment, which seems in no way to promise a better life, or in any wise to be to the welfare of the child." 82 Va. 572. W decline, therefore, to disturb the present status, and remand the infant child Lydia to the care and custody of respondent Logsdon. The other judges concur.