De Jarnett v. Harper

POLLY A. De JARNETT, Respondent, v. JOSIAH HARPER, Appellant.

Kansas City Court of Appeals, May 11, 1891.

1. **Guardians and Curators :** JURISDICTION : DOMICILE OF CHILD. The jurisdiction to appoint a guardian for a minor rests alone with the probate court at the county where the minor has his domicile ; and primarily the domicile of the parents, or the survivor of them, is the domicile of the minor child.

2. **Parent and Child :** GIFT BY AND DEATH OF THE FATHER : MOTHER'S RIGHT : DOMICILE. The fact that the father in his lifetime gave the custody of his child into the keeping of another person being in a different county can have no effect beyond the period of the father's life ; and, at his death, the mother was the natural guardian and entitled to the custody of the child, and was bound for its support and maintenance, and this right of the surviving mother was inalienable by any parol agreement or contract of the father, which was revocable during the lifetime of the father and stood revoked at his death. Besides, the minor living with such person in such different county under such agreement of the father did not affect its domicile which continued to be that of the parent.

3. ———— : ———— : FITNESS OF MOTHER : DOMICILE ; JURISDICTION TO APPOINT GUARDIAN. The fact that the mother may have been adjudged insane can have nothing to do with the domicile of the child, which determines the jurisdiction of the court to

appoint its guardian. The mother's domicile (whether sane or insane) is ·the domicile of the minor child. The incompetency or unfitness of the mother for guardian can only be tried and determined by the probate court of the county where she is domiciled.

*Appeal from the Johnson Circuit Court.*—HON. CHAS. W. SLOAN, Judge.

AFFIRMED.

*W. W. Wood*, for appellant.

(1) It is not averred in the application, nor shown in the evidence, that the probate court was in error as to any fact connected with the domicile of Richard P. Harper. The error, if error at all, was one of law based upon undisputed facts, and error *coram nobis* will not lie to correct such errors. *Calloway v. Nifong*, 1 Mo. 223; *Ex parte Toney*, 11 Mo. 661; *Powell v. Gott*, 13 Mo. 458; *Latshaw v. McNees*, 50 Mo. 381; *Le Bourgeoise v. McNamara*, 10 Mo. App. 116; *Le Bourgeoise v. McNamara*, 82 Mo. 189. (2) While the general doctrine is that the domicile of the child follows that of the parent, yet the parent may confer upon another the permanent custody of his child, subject to a right of revocation by the consent of a court of chancery, and it follows that, until the right to the custody is revoked, that the domicile of the child is with the person in whose custody he has been placed. *Weir v. Marley*, 99 Mo. 484; *Clark v. Boyer*, 32 Oh. 299; *Chapsky v. Wood*, 40 Am. 321, and note. Authorities which directly hold that the father has the right to change the domicile of the minor child: *Gant v. Zimmerman*, 5 Notes of Cases, 440; *Levy's Case*, 2 Cong. El. Cases, 47; Wharton Conflict of Laws, sec. 41; *In re Stockman*, 38 N. W. Rep. 876, 881; *Wood v. Wood*, 5 Paige, 596; Jacobs on Domicile, secs. 235, 236, 255, 260, *et seq.; LaMar v. Mican*, 114 U. S. 452; *Kirkland v. Whately*, 4 Allen, 462; *Lubec v. Eastport*, 3 Greenleaf (Me.) 205; *St. George v. Deer Isle*, 3 Greenleaf, 360; *Dennysville v. Trescott*, 30 Me. 470, 511;.

De Jarnett v. Harper.

*Charleston v. Boston,* 13 Mass. 469; *Wells v. Kennebunk,* 8 Greenleaf, 200; *Washington v. Beaver,* 2 W. & S. ( Pa. ) 548; *Milo v. Harmony,* 18 Me. 415; *Portland v. Gloucester,* 16 Me. 427; *Springfield v. Wilbraham,* 4 Mass. 493; *Liberty v. Palermo,* 10 Atl. Rep. 455; *Metcalf v. Lomax,* 4 C. L. J. 79; *Blumenthal v. Tanneholtz,* 31 N. J. Eq. 104. ( 3 ) The death of the father did not *ipso facto* change the domicile of the child. To constitute a change of domicile both the intent to change and some overt act towards carrying out the intent are necessary. The mother was incapable of either forming an intention or carrying it into execution. Schouler's Dom. Rel., sec. 230; Jacobs on Domicile, sec. 235; *Tiller v. Abernathy,* 37 Mo. 196. But suppose the mother had been sane. Upon the death of the father she would simply succeed to his rights—stand in his shoes as it were. As has been seen, the father could only change the domicile of the child by revoking the gift. It was still a question for judicial investigation as to whether it was for the best interest of the child that it should be awarded to the custody of the mother, and until that question was determined the domicile would remain with appellant. The appointment of Harper was not void for want of notice. The mother having been adjudged insane, it was unnecessary to notify her of the application, or to again pass upon the question of her competency. That question had been settled in a proceeding that was binding upon her and all the world. The law will not require the doing of a vain and useless thing. *Rannels v. Garner,* 80 Mo. 474.

*O. L. Houts,* for respondent.

( 1 ) The mother surviving the father became the natural guardian of the minor, Richard Harper, and was entitled to the custody and care of his person, education and estate. R. S. 1889, sec. 5279. ( 2 ) The domicile of the surviving parent is the domicile of the

minor child. The domicile of the father at the time of his death, June, 1888, was Bates county, Missouri. The domicile of the mother who survived was then, and continued to be, in Bates county, Missouri, until her death there, March 23, 1890. Bates county was then and at all times prior this "minor's domicile," and the probate court of that county had jurisdiction of his person and estate, and to appoint for him a guardian, after the death of his mother, or before, after having adjudged her incompetent or unfit under the statutes. The probate court of Johnson county, therefore, had no jurisdiction to make the appointment, March, 1889, or at any time, and its order is, therefore, void and should be set aside. R. S. 1889, sec. 5281 ; *Lewis v. Castello*, 17 Mo. App. 593 ; *Lacy v. Williams*, 27 Mo. 280 ; *Marheineke v. Grothaus*, 72 Mo. 204 ; *In the Matter of Scarritt*, 76 Mo. 565 ; *Weir v. Marley*, 99 Mo. 484. ( 3 ) The father, in his lifetime, by giving the minor to the defendant Josiah Harper, and placing it in his custody in Johnson county, did not change its domicile to Johnson county, or give it a different one from his own or its surviving mother, or prevent her from becoming its natural guardian, or deprive her of any of her rights to its care and custody. He is expressly prohibited by statute from doing this while the mother lived, even by as solemn an act and instrument as a will. R. S. 1889, sec. 5283. This act did not prevent the father from resuming possession of the child at any time, or changing its domicile. Authorities, *supra*. ( 4 ) The insanity of the mother did not change the domicile of the minor no more than it changed her own ; for the law is, "That the domicile of the surviving parent is the domicile of the minor child." It simply authorized the probate court of Bates county to appoint a guardian which was done. ( 5 ) The appointment of respondent as guardian was regular, and the record of the probate court of Bates county, read in evidence, was competent proof thereof. The recitals were more than the statute requires, and a copy of the

order is all that is necessary.   R. S. 1889, sec. 5296 ; 51 Mo. 481.

GILL, J.—The guardianship of Richard P. Harper, a ten-year-old infant, is the subject-matter of this controversy.   The infant Richard is the only son of J. P. and Mary M. Harper.   The former died in June, 1888, while the latter died in March, 1890.   At the time of the death of these parents respectively, and for several years prior thereto, they were domiciled in Bates county, Missouri.   The plaintiff, Polly A. De Jarnett, is the grandmother, while defendant, Josiah Harper, is a cousin of the said infant.   The said grandmother resides in Bates county, and claims the guardianship and curatorship of the child by virtue of the appointment by the probate court of Bates county in October, 1889, while defendant, Josiah Harper, resides in Johnson county, and asserts his rights to such guardianship by virtue of an order of the probate court of Johnson county, Missouri, made in March, 1889.   Plaintiff filed her complaint and application in the Johnson probate court asking the court to revoke the appointment of defendant for the alleged reason, among other things, that when said defendant was so appointed as guardian and curator of the infant Richard, his, the said minor's, domicile was not in Johnson county but in Bates county, and that, therefore, the said probate court of Johnson county had no jurisdiction.   The cause was tried in the Johnson county probate court, was thence appealed to the circuit court, where on a trial judgment was entered in plaintiff's favor, and defendant has appealed to this court.

It is well settled that jurisdiction to appoint a guardian for a minor rests alone with the probate court of the county where said minor has his domicile.   R. S. 1889, sec. 5281 ; *Lacy v. Williams*, 27 Mo. 280 ; *Lewis v. Castello*, 17 Mo. App. 593 ; *Marheineke v. Grothaus*, 72 Mo. 204.   If then it was a fact that, when the order for appointment of defendant was made by the probate

court of Johnson county, the minor's domicile was in Bates county, then clearly such action by said Johnson county probate court was unauthorized and void. Where then was the domicile of this minor in the year 1889, when these two conflicting appointments were made? The circuit court held it to be in Bates county, and as we think correctly, too. When such appointment was made, it is true the father was dead, but the mother survived, was then living and had her home, her domicile, in Bates county ; and it is beyond dispute that primarily the domicile of the parents, or of the survivor of them, is the domicile of the minor child.

But it is claimed that, before the father, James P. Harper, died, he gave the custody of this child into the keeping of defendant, then living in Johnson county, and that by reason thereof its domicile had been changed. Even admitting the force of this contention, such a disposition of the infant had no effect beyond the period of the father's life. A the death of James P. Harper, his wife, Mary M., beca. c entitled to the custody, and was bound for the maintenance and support, of her minor child. She was, on the death of her husband, the natural guardian of the child, and entitled to its care, custody and control. `R. S. 1889, sec. 5279. This right of the surviving mother was inalienable by any such agreement or conduct of the father as is here relied on. It was revocable during the life of the father, and stood as revoked absolutely at his death. *In Matter of Berenice Scarritt*, 76 Mo. 584; *Weir v. Marley*, 99 Mo. 484; *In re Blackburn*, 41 Mo. App. 622. And, further, although the father, residing and domiciled in Bates county, may have intrusted the care and keeping of the minor to defendant, whose home was in another county, this did not effect a change in the domicile of the infant. Although ' i. with defendant in Johnson county, its domici' n· ied to be that of its parents in Bates county. ۰ *Leineke v. Grothaus, supra; Lewis v. Castello*, 17 M.y. App. 596.

Again it is said, as the mother had several years before the father's death been adjudged insane and sent to an insane asylum, and that, although she had been returned to and died at her home in Bates county, and that there had been no adjudication of sanity restored, that thereby she had lost her right to the custody and guardianship of her infant child. Now, in the first place the question of the sanity or insanity of the surviving mother has nothing to do with the matter of the *domicile of* the child, which must determine the jurisdiction of the court assuming to appoint its guardian. The mother's domicile (whether she be sane or insane) is the domicile of the minor child. And, in the second place, the incompetency or unfitness of the mother for the duties of the guardianship can only be tried and determined by the probate court of the county where such mother is domiciled, and this, too, after ten days' notice to such mother. The statute has provided in specific terms how and by whom this question of unfitness shall be tried and adjudged, and no other court or tribunal can assume to act in the premises. R. S. 1889, sec. 5281.

Other suggestions in counsel's brief relating to admission of the record of the Bates county probate court, etc., we have examined, and find no error. We have here given our views on such questions as are material to the controversy, and such as deserve mention in an opinion. We conclude then that the judgment of the circuit court should be affirmed, and it is so ordered. All concur.