JOHNSON ET AL., PLAINTIFFS IN ERROR v. BEAZLEY.

1. **An Administrator's Deed** is not invalidated by reason of the fact appearing on its face that the land was appraised by only two householders.

2. ———: RECITAL. A recital in a deed and in the certificate of acknowledgment thereof, that it is executed by the grantor as administrator, is evidence of his appointment as administrator.

3. **Probate Court Judgments**: JURISDICTION, WILLS AND ADMINISTRATION. The probate courts of this state are courts of record, and their jurisdiction in respect to wills and the administration of the estates of deceased persons, is general, exclusive and original; and whilst any action on subjects not committed to their jurisdiction is of no force or validity, their action on these subjects is entitled to the same weight as that of any other court of record, and is conclusive in all collateral proceedings.

Johnson v. Beazley.

4. **Administrator's Deed**: JURISDICTION. It is not essential to the validity of an administrator's deed, that the record of the court from which he derived his appointment, shall show affirmatively the existence of all the facts necessary to authorize the appointment.

5. **Administrator's Appointment can not be questioned collaterally.** The appointment of an administrator can not, in a collateral proceeding, be invalidated by proof that the deceased, at the time of his death, had his place of abode in a county other than that in which the appointment was made.

*Error to Crawford Circuit Court.*—HON. ELIJAH PERRY, Judge.

*J. R. Arnold* for plaintiff in error.

*J. C. Kiskaddon* for defendant in error.

An administrator's deed is made by the statute *prima facie* evidence of the facts therein stated. W. S., page 98, Sec. 37; *Moore v. Wingate*, 53 Mo. 398. Then by this deed we ascertain that all the proceedings were regular, and were approved by the court, and that Scott acted as administrator *de facto*, although he might not be such *de jure*, and that the probate court recognized him in that capacity. . Nor do the plaintiffs dispute his appointment, but only the jurisdiction of the court to make it. There is but one objection apparent upon the face of the deed, and that is that there were but two appraisers. But that is a mere irregularity which will not vitiate the defendant's title, if the court had jurisdiction. *Moore v. Wingate*, 53 Mo. 398. The only attack upon the jurisdiction of the court is, that the deceased was not domiciled at the time of his death in Crawford county. On this point see *Dequendre v. Williams*, 31 Ind. 444; *Grignon v. Astor*, 2 Howard 319; *Thompson v. Tolumi*, 2 Peters 165; *Sheldon v. Newton*, 3 Ohio St. 494. Probate courts are not courts of special or limited jurisdiction; they are not inferior courts in the technical sense of the term, because an appeal lies from their decision, but they are courts of record having an

original general jurisdiction over a particular subject. See cases already cited, and, *Schroyer v. Richmond,* 16 Ohio St. 455; *Parsley v. Hayes,* 22 Iowa 34. The proceedings of probate courts are *in rem*; all the world are parties. All that is required is jurisdiction of the subject matter. Cases already cited, and, *Satcher v. Satcher* 41 Ala. 26; *Perkins v. Fairfield,* 11 Mass. 227; *Robb v. Irwin,* 15 Ohio 689; *Benson v. Cilly,* 8 Ohio St. 604; *Barden v. State,* 6 Eng. (Ark.) 519. In a collateral proceeding other courts will not inquire whether or not the deceased was a resident of the county in which an administrator of his estate is appointed. *Wight v. Wallbaum,* 39 Ill. 554; *Fisher v. Bassett,* 9 Leigh 119.

HENRY, J.—Plaintiffs brought ejectment against defendant for a tract of land situate in the county of Crawford, described as follows: "The northeast quarter of section thirty, township thirty-six, range four, west." Both parties admitted title in one Thomas J. Higginbotham, and it was agreed that plaintiffs are his heirs at law. Defendant claimed, under a deed from H. C. Scott, the administrator of the estate of said Higginbotham, made on a sale of said land, under and in pursuance of an order of the probate court of Crawford county of the December term, 1866. The land was sold by said administrator on the 19th day of March, 1867. At the next term of said court, June, 1867, the administrator's report of said sale was approved by the court, and on the 12th day of June, 1867, he executed a deed for the premises to defendant. To the admission of this deed in evidence plaintiffs objected, on the ground that it did not appear by said deed "that the probate court of Crawford county had jurisdiction of the estate of said Higginbotham, or that said court had authority to appoint H. C. Scott to take charge of the same; that it appeared by said deed that the land was appraised by only two householders; that there was no evidence of the appointment of Scott as administrator of said estate." These objec-

tions were overruled, and the deed was read, as evidence, to the jury; and this was all the evidence offered by defendant. Plaintiffs then offered to prove, by competent witnesses, that at the time of his death, said Higginbotham resided in the county of Dent, and that he never resided in Crawford county. This was objected to by defendant and excluded by the court. But inasmuch as, in their testimony in chief, plaintiffs had been permitted, without objection, to prove the same fact, we shall take it for granted that Higginbotham did, at his death, reside in Dent county. There was a judgment for defendant, and plaintiffs have brought the cause to this court by writ of error.

The three alleged errors are: that it does not appear that the probate court of Crawford county had jurisdiction of the estate of Higginbotham, or that the court had authority to appoint Scott administrator of his estate, that it appeared by the deed that the land was appraised by only two householders; that there was no evidence that Scott had ever been appointed administrator.

The second point made by plaintiffs was decided by this court in *Moore v. Wingate*, 55 Mo. 398. Section 6, 1. AN ADMINISTRA- Wagner's Statutes, 2d Vol. p. 887 provides that TOR'S DEED. "words imparting joint authority to three or more persons, shall be construed as authority to a majority of such persons, unless otherwise declared in the law giving such authority." In *Moore v. Wingate*, it was held that a certificate of appraisement signed by two of the appraisers was sufficient.

With regard to the third point, Sec. 35, Wag. Stat., 1 Vol. 98, provides that "if such report (report of sale) be approved by the court, such sale shall be valid, 2. ——: recital. and the executor or administrator, or if he be the purchaser, the clerk of the court shall execute and deliver to the purchaser a deed referring, in apt and appropriate terms, to the order of sale, and the court by which it was made, the certificate of appraisement, the advertisement,

the time and place of sale, the report of the proceedings, and order of approval thereof by the court, and the consideration and conveying to the purchaser all the right, title and interest which the deceased had in the same." Sec. 37, same page, provides that " such deed shall convey the decedent's title, and be evidence of the facts therein recited." The deed to defendant, it will be observed, contains all the recitals required by the statute. It recites, that on the 8th day of December, 1866, by a proper order of record, *H. C. Scott, as administrator* of the estate of Thos. J. Higginbotham, was ordered to sell the real estate in controversy. In the acknowledgment of the deed in open court by the administrator, said Scott is again mentioned as the *administrator of said estate.* As the statute makes the deed evidence of such facts as are required to be recited in the deed, no other proof than the deed itself was necessary to establish, in the first place, that said Scott was administrator of said estate.

The remaining question is one of considerable difficulty. Some of the ablest courts in the United States have held

3. PROBATE COURT the doctrine contended for by the plaintiffs
JUDGMENTS: juris- in error, while others, of equal ability, have
diction, wills and
administration. ruled otherwise. The decisions of our own court are not in entire harmony with each other, and in several of our sister States the same vacillation will be observed in the adjudications on this subject. In this perplexing conflict of authority, we can but weigh the authorities and arguments, and incline, as in our judgment, they preponderate.

The 12th section of article 5 of the constitution of this State, in force when the probate court of Crawford county was established, was as follows: " Inferior tribunals shall be established in each county for the transaction of all county business, for appointing guardians, for granting letters testamentary and of administration, and for settling the accounts of executors, administrators and guardians." By the act of the General Assembly creating this court,

(Sess. Acts 1855, page 499,) exclusive original jurisdiction was conferred upon it, in all cases relative to the probate of last wills and testaments, granting letters testamentary and of administration, settling and allowing accounts of executors and administrators, and determining all disputes and controversies whatever, respecting wills and the right of executorship and administration. By the 5th section, it was made a court of record, and true and faithful records of its proceedings were required to be kept. By section 3, article 1 of the administration law, it is provided that "letters testamentary and of administration shall be granted in the county in which the mansion or place of abode of the deceased is situated. If he had no mansion house and be possessed of lands, letters shall be granted in the county in which the land or the greater part therof lies, etc." The assumption upon which is based all the argument for holding the record as a nullity is, that the county and probate courts of this State are of inferior and limited jurisdiction, although expressly made courts of record by the statute, with exclusive original jurisdiction over the subjects committed to them, and although the constitution of the State provided for their creation, and, in general terms, defined the jurisdiction that was to be conferred upon them. It is unnecessary to refer to cases decided by this or other courts, in regard to special jurisdiction confided by statute to justices of the peace or to circuit courts, wherein those courts had no jurisdiction of the subject, except as conferred and restricted by the statute. In such cases it is well settled in this State, that the jurisdiction of the court must appear in the record, and that, if it do not so appear, the judgment may be attacked in collateral proceedings. The case of *Lacey v. Williams*, 27 Mo. 280, was one in which a guardian was appointed for an infant not residing in the county where the appointment was made, but owning land therein, and it was a direct proceeding to remove the guardian so appointed. It is clear that in that case the court had no such power as it exercised, but the

main question in this was not raised in that case, and it is no authority for the position here taken by the plaintiffs in error.    It is not intimated in the opinion of the court that the action of a probate court upon a subject-matter confided to it, occupies any different position from that of the circuit court upon a subject-matter over which it has general jurisdiction.    That the probate court of Crawford county, in the case we are considering, erred in the appointment of an administrator of the estate of Higginbotham, who resided and had his mansion in the county of Dent, although he owned land in the county of Crawford, is clear ; but the appointment having been made, the presumption is, that the matter has been considered and determined by the court, and until the contrary appears in a direct proceeding in that court, or some higher court to which an appeal lies, the record of the appointment will be conclusive, in all collateral proceedings.    The jurisdiction of probate courts is not, like that of justices of the peace, confined to special cases in which the jurisdiction must appear, but their jurisdiction pertaining to wills and administrators is general.    The subjects of their jurisdiction are clearly defined, and any action of theirs outside of such subjects, would be of no force or validity, and the same may be said of the circuit court ; but their action, on subjects exclusively and originally confided to them, is entitled to the same weight as that of any other court of record.

It is insisted that the appointment of H. C. Scott as administrator of Higginbotham's estate is to be treated as 4. ADMINISTRATOR'S a nullity, because there is no record showing DEED : Jurisdiction. the fact that the deceased resided at the date of his death in Crawford county, in other words, that the record must show facts which authorized the action of the probate court : not merely that an administrator was appointed, but that all the requirements of the statute had been duly complied with.    The statute provides that if the deceased had no mansion house, or place of abode at the

time of his death, but owned land, letters should be granted in the county in which the greater part of the land lies : and the argument made here would be equally good in the case of an appointment of an administrator of one deceased who had no domicil, if the record did not expressly show that the greater part of the lands were in the county in which the appointment was made—and yet this would not be seriously insisted upon.   In the case at bar, if the position taken by the plaintiffs in error is correct, it was wholly unnecessary to prove that Higginbotham resided, and had his mansion house in Dent county ; for the argument is that, unless the record shows, either that the deceased resided and had his mansion house in Crawford county, or had no residence or mansion house, but owned lands, and that the greater part of said lands were in Crawford county, the appointment is to be treated as a nullity.   The case of *Schell v. Leland*, 45 Mo. 294, is not an authority for the doctrine contended for by plaintiffs in error.   The Kansas City Court of Common Pleas was, by the terms of the act creating it, expressly limited on the subject matter of mechanics' liens to the township in which it was located, and it was held, that when in that court a lien was attempted to be enforced, the record must show that the property against which the lien was sought to be enforced, was in Kaw township. It was a local court, confined in its jurisdiction to Kaw township, an inconsiderable portion, geographically, of the county of Jackson. Such a court is not to be treated as occupying the same position as probate courts, which, by the statute, "have exclusive original jurisdiction in all cases relative to the probate of last wills and testaments, the granting letters testamentary and of administration, &c." and whose jurisdiction is coextensive with the respective counties for which they are created.   The case of *Bryan v. Mundy*, 14 Mo. 459, originated on a motion in the probate court, two years after a demand was allowed and classified by that court, to set it aside, on the ground that the administrator

had no notice that such demand would be presented for allowance. The record did not show that he had notice, and there was evidence tending to show that, in fact, he had no notice. That, it will be perceived, was a direct proceeding to set aside the judgment, between the original parties to the suit, no rights of third persons intervening; and although the doctrine of that case, as Judge Sherwood observed in *Brooks v. Duckworth's adm'r,* "has been very often doubted," yet, admitting it to be correct, it comes far short of sustaining the doctrine here insisted upon. A careful analysis of the case of *Valle v. Fleming,* 19 Mo. 454, we think, will show that it does not conflict with the doctrine we have endeavored to maintain. Judge Scott says, in that case, "that the county courts have no other jurisdiction than that which is specifically conferred on them by statute. They have no common law jurisdiction, nor can they be said to be courts of general jurisdiction, in whose favor, by the common law, the liberal intendments are indulged, which are extended to courts of that character. But the great mischief which, experience has shown, arises from avoiding sales made under the authority of tribunals having jurisdiction of the subject, have induced courts to extend an enlarged liberality of construction to proceedings instituted for such purpose, with a view to uphold them. As to these proceedings, the presumption extended to courts of general jurisdiction is indulged." In that case the record affirmatively showed that no notice had been given, and Judge Scott says, "How then can a notice be presumed, when the record on its face shows that it was impossible in the nature of things, that it could have been given." The same distinguished judge said, in *Riley's adm'r v. McCord's adm'r,* 24 Mo. 267, "an illegality in the grant of letters of administration cannot be taken advantage of in a collateral proceeding. They must be regarded as valid until they are regularly revoked." In *Strouse v. Drennan,* 41 Mo. 289, this court held a different doctrine. It is there said that "our county and probate

courts are not courts of general jurisdiction, according to the common law meaning of the term, in which such liberal intendments are indulged, for they have only limited jurisdiction which is especially conferred on them by statute." To the same effect is *Gibson v. Vaughn, adm'r, &c.*, 61 Mo. 418. We think, after a careful review of the authorities, that those are not in harmony with the best considered cases in this country, and should be overruled. The case of *Brooks v. Duckworth*, 59 Mo. 49 is an express decision of this court on the point under consideration. It was there held, that on a presentation of a demand to the county court for allowance against an estate, the jurisdiction of that court to pass on its validity at once arose, and the conclusion of the court upon the evidence, and all other matters to be adjudicated, could not be attacked collaterally.

In *Kemp's Lessee v. Kennedy*, 5 Cranch 173, Ch. J. Marshall said, " all courts from which an appeal lies, are inferior courts, in relation to the appellate court, before which their judgment may be carried, but they are not therefore inferior courts in the technical sense of those words. They apply to courts of special and limited jurisdiction, which are erected on such principles, that their judgments, taken alone, are entirely disregarded, and the proceedings must show their jurisdiction. The courts of the United States are all of limited jurisdiction, and their proceedings are erroneous if the jurisdiction be not shown upon them. Judgments rendered in such cases may certainly be reversed, but this court is not prepared to say that they are absolute nullities." In *Griffith v. Frazier*, 8 Cranch 9, Ch. J. Marshall observed : " To give the Ordinary jurisdiction, a case in which, by law, letters of administration may issue, must be brought before him. In the common case of intestacy, it is clear that letters of administration must be granted to some person by the Ordinary; and though they should be granted to one not entitled by law, still the act is binding until annulled by the competent

authorities, because he had power to grant letters of administration in the case." To the same effect is the case of *McNitt v. Turner*, 16 Wallace 353. A statute of Illinois provided that " in all cases where the intestate shall have been a non-resident, or without a widow, next of kin, or creditors in this State, but having property within the State, administration shall be granted to the public administrator of the proper county, and to no other person." The probate justice of Adams county appointed Archibald Williams administrator of the estate of Samuel Spotts deceased, and, as such administrator, he applied to the circuit court of said county, and procured an order to sell certain tracts of land of which said Spotts died seized. The proceedings of the probate court did not show that Williams was public administrator, nor did they show that there was no such officer in the county at the time. Justice Swayne, delivering the opinion of the court, said : " It does not appear that Williams was not the public administrator, and, if he were not, that there was any such officer for Adams county at that time. If there was not, the appointment of Williams was proper. Error must be shown. It is not to be inferred, except where the inference is inevitable. Everything consistent with the record, which would have warranted the appointment, will be presumed to have existed, and to have been found and acted upon by the court. Acts done which presuppose the existence of other acts to make them legally operative, are presumptive proof of the latter." To the same effect are the cases of *Grignon v. Astor*, 2 Howard 318 ; *Kennedy et al. v. Georgia St. Bank*, 8 Howard 586, and *McCormick v. Sullivant*, 10 Wheat. 199.

*Propst v. Meadows*, 13 Ill. 157, was the case of an allowance of a demand against an estate, which it was sought to avoid on the ground that the executor had no notice of the proceeding. Caton, Judge, delivering the opinion of the court, said : " Considering, as we do, that this judgment was not conclusive upon the executor, for want of

notice to appear and defend, the question arises, in what way he may obtain relief against the effects of the adjudication. We are not now prepared to say that this judgment was an absolute nullity from the omission of the record to show a notice to the executor. The county court, although "of limited, is not, strictly speaking, of inferior, and certainly is not a court of special jurisdiction. It is a court of record, and has a general jurisdiction of unlimited extent over a particular class of subjects, and when acting within that sphere, its jurisdiction is as general as that of the circuit court. When, therefore, it is adjudicating upon the administration of estates, over which it has a general jurisdiction, as liberal intendments will be granted in its favor as would be extended to the proceedings of the circuit court; and it is not necessary that all the facts and circumstances which justify its action should affirmatively appear upon the face of its proceedings." In *Wight v. Wallbaum*, 39 Ill. 563, it was held that "where a court has jurisdiction of the subject-matter and of the parties, its judgment must be held conclusive, in all cases, except in a direct proceeding for its reversal." That was a case in which it was urged that the failure of the probate court to observe the requirements of the law, in granting letters of administration with the will annexed, rendered the appointment void.

The case of *Cutts v. Hoskins*, 9 Mass. 543, very similar in its facts to the case at bar, and in which it was held that a grant of letters by the probate court of one county, when intestate had died in another, which was prohibited by their statute, was a nullity and might be attacked in a collateral proceeding, was reviewed and its doctrine condemned by the learned judge who delivered the opinion of the court in *Wight v. Wallbaum, supra*. *Schroyer v. Richmond & Staley*, 16 Ohio St. 455, and *Dequendre v. Williams*, 31 Ind. 445, fully sustain the views expressed by Walker, Judge, in *Wight v. Wallbaum*. In *Schroyer v. Richmond*, Scott, C. J., observes, "whilst the statute requires the

record to contain ' an entry of the appointment' of all guardians, it nowhere requires that the record shall show the existence of a state of facts such as to warrant the exercise of its authority, or the evidence upon which the court relied, in making the appointment. Nor does any rule of law require this of such a court. True, it is a court of limited jurisdiction, and it is equally true that the jurisdiction of each of the courts of the State·is expressly limited, either by the constitution or by statute. But as was said in the case of *Sheldon v. Newton* (3 Ohio St. 500), "the distinction is not between courts of general and those of limited jurisdiction, but between courts of record, that are so constituted as to be competent to decide on their own jurisdiction, and to exercise it to a final judgment, without setting forth the facts and evidence on which it is rendered, and whose records, when made import absolute verity, and those of an inferior grade, whose decisions are not of themselves evidence, and whose judgment can be looked through for the facts and evidence necessary to sustain them." *Kimball v. Fisk*, 39 N. H. 110, is in harmony with the cases in Ohio, Indiana, Illinois and the Supreme Court of the U. S. The distinction is not between courts whose proceedings are, and courts whose proceedings are not, according to the course of the common law; but between courts of record which have, and, in the particular case, exercise their general original jurisdiction, and courts not of record—courts of record, which have a limited and special jurisdiction, and courts of record having original general jurisdiction, but which, in the particular case, exercise a limited jurisdiction, not within the scope of their general jurisdiction.

In a note to *Roderigas v. East River Savings Institution*, reported in the American Law Register, Vol. 5, No. 4, 213, Judge Redfield says: " There is no very good reason why the jurisdiction of courts of probate, so far as it depends upon domicile within a particular district within the·State, should be allowed to be attacked collaterally, and all the

proceedings rendered nugatory. But the decisions to this extent are very numerous, and have never been questioned, to our knowledge." Again, he says: " There is no controversy, we believe, or has been none heretofore, that courts of probate, whose jurisdiction is created and defined by statute for the settlement of estates, within particular defined districts, must be regarded both as inferior courts, and of special and limited jurisdiction, and that no presumption could be made in favor of their jurisdiction beyond what appears on the face of their proceedings, and that even where that appeared regular, it might be contradicted in any collateral proceeding, and the whole action of the court rendered nugatory and void for all purposes." If we comprehend the statement of this eminent author, it strikes us as most remarkable, in the face of the numerous decisions we have cited, from Ohio, Indiana, Illinois, New Hampshire, the Supreme Court of the United States, and to which we now add *Fisher v. Basset*, 9 Leigh. 119 ; *Den ex. Dem. Obert v. Hammel*, 18 N. J. L. 75, and *Hahn v. Kelley*, 34 Cal. 391. In nearly all of these cases, it was expressly held that the judgment of a court of record having general jurisdiction over administrations, &c., could not be attacked in collateral proceedings, and for more than a half century there has not only been a *controversy* on the subject mentioned by Judge Redfield, but the weight of authority overwhelmingly sustains the views we have herein expressed, and which are so ably maintained in the cases to which we have referred. *Langworthy v. Baker*, 23 Ill. 484, cited by Judge Redfield, does not sustain his position. It was a direct and not a collateral proceeding. It was a writ of error prosecuted for the express. purpose of having the judgment of the probate court reversed by the Supreme Court, and BREESE, J., who delivered the opinion of the court, cites approvingly *Propst v. Meadows, supra*. In the case of *Roderigas v. East River Savings Inst.*, the court of appeals of New York held that the appointment, by a probate court, of an administrator of the estate of one not dead,

·could not be attacked collaterally; and it is probably true, as Judge Redfield remarks, "that that decision is without a precedent, either in English or American jurisprudence." By its judgment in that case, the probate court, of course without notice to the living man, declared him dead, and invested another with title to his property. No man in New York or elsewhere in the United States can be deprived of his property, except by due process of law, and it would be strange indeed, if, in such a case as Roderigas', the supposed deceased could not, against the whole world, assert his rights against such a judgment, either directly or collaterally. Probate courts have no jurisdiction conferred upon them over the estates of living men. An order appointing an administrator of the estate of a living man would have the effect, if valid, of taking the property of ·one man, without his consent, and vesting it in another. Not so of the appointment of one as·administrator, not entitled, against another, who has by law, the right to administer. The latter has no right of property that would be divested, and the condition of things exists, in regard to that estate, which awakes the jurisdiction of the probate court then, and only then, becoming possessed of power and authority to exercise its general jurisdiction in the particular case. *Griffith v. Frazier*, 8 Cranch 9.

When Higginbotham died, it became necessary to appoint an administrator of his estate. The probate court

5. ADMINISTRA- had to determine several questions of fact
TOR'S APPOINT-
MENT. before making the appointment; among them, that Higginbotham was dead, that he resided and ·had a mansion house in the county where the court was .asked to make the appointment, or that, when he died, he ·had no place of abode or mansion house, that he owned land in that county, and that it was the greater part of his land. Having a general jurisdiction over the subject-matter, and the law requiring the court to pass upon those questions, before granting letters of administration on his ·estate, it is to be exclusively presumed, in a collateral pro-

ceeding, that the court not only did so, but that it correctly passed upon them. To allow the heirs, or any one else, in a collateral proceeding to question the correctness of the judgment of the court, would so imperil the titles conveyed at administrator's sales of lands that no prudent man would bid their value, and estates would be sacrificed. Both public policy and the weight of authority sustain the title which defendant acquired by his purchase at the administrator's sale, and as the instructions which the court gave the jury are in harmony with these views, and those asked by plaintiffs and refused, asserted the contrary doctrine, the judgment is affirmed. All concur except Hough, J., who concurs in the result.

AFFIRMED.