## SMITH, Appellant, v. YOUNG, Respondent.

### St. Louis Court of Appeals, March 9, 1909.

1. **GUARDIANS: Domicile of Minors: Jurisdiction of Probate Courts.** The jurisdiction of a probate court to appoint a guardian or curator of a minor is determined by the domicile of the minor and such domicile is a matter *in pais* which the probate court must find as a fact in order to support its jurisdiction to make such appointment.

2. ————: ————: **Domicile of Parent.** As a general rule the domicile of the parents is the domicile of the minor, but it is not always so for the purpose of determining the jurisdiction of the probate court to appoint a guardian or a curator; in a case where both parents are dead and a child is domiciled with its grandparents who are next of kin and stand *in loco parentis* to the minor, their domicile is the domicile of the minor for such purpose.

3. ————: ————: ————. Where the father of an infant babe, on the death of its mother when it was only three days old, placed it in charge of its grandparents, who lived in another county, with the agreement that they should retain it ever after, and the father died without revoking the agreement as to the future of the child, immediately upon the death of the father the domicile of such grandparents became the domicile of the child.

4. ————: **Order Appointing Guardian: Collateral Attack.** Where a probate court made an order appointing the curator of an estate of a minor, a proceeding brought at a subsequent

136 App—5

term to set aside such order was a collateral attack upon the judgment of the probate court making the appointment, though if such proceedings had been brought at the same term as the order it would have been a direct attack.

5. JURISDICTION: Findings of Jurisdictional Facts: Probate Courts: Order Appointing Curator. Where the existence of a fact is necessary in order to give a court jurisdiction of a given matter, the finding of the court that such fact exists is conclusive and can not be questioned in a collateral attack. Where a probate court appointed a curator of the estate of a minor and in doing so necessarily found, in order to assume jurisdiction, that the domicile of the minor was in the same county as the court, such finding was conclusive and could not be attacked collaterally, although the finding was erroneous.

6. PROBATE COURTS: Appeals: Order Refusing to Vacate Appointment of Curator. An appeal will lie from a judgment of a probate court refusing to vacate the appointment of a curator.

Appeal from Lincoln Circuit Court.—*Hon. Jas. D. Barnett,* Judge.

AFFIRMED.

*Chas. Martin* and *W. A. Dudley* for appellant.

The court erred in refusing to declare the law to be that this proceeding was a direct attack upon the order or judgment of the probate court of Lincoln county appointing Young curator; and that no estoppel resulted from the fact that no appeal was taken from such order or judgment. In re Looney, 112 Mo. App. 195. There is no question as to the fact that Mr. Jackson brought the child to this State upon the death of his wife and left her in the care and custody of Mr. and Mrs. Smith with the understanding and agreement that she should remain in their care and keeping. They stand toward her *in loco parentis* with all the duties, obligations and rights existing between natural parents and child, and when that relation exists the residence and domicile of persons who take the place of the parent, as Mr. and Mrs. Smith does, with this child,

becomes the residence and domicile of the child. State ex rel. v. Hamilton, 202 Mo. 377, l. c. 386; Cox v. Boyce, 152 Mo. 583; Academy v. Bobb, 52 Mo. 360; State v. Karanaugh, 133 Mo. 460; Hennessy v. Brewing Co., 145 Mo. 411; Eickhoff v. Railroad, 106 Mo. App. 544.

*R. H. Norton* and *Avery, Young & Woolfolk* for respondent.

STATEMENT.—This proceeding originated in the probate court of Lincoln county. It is sought thereby to have that court vacate and set aside its judgment given at a prior term, by which the defendant Young was appointed curator of the estate of Etta Louise Jackson, a minor, under the age of fourteen years. Plaintiff was appointed curator of the minor's estate by the probate court of Pike county, where it is claimed the minor was domiciled. Besides praying the probate court of Lincoln county to set aside the appointment of the defendant curator, Young, he prays that Young, the Lincoln county curator, be required to transfer the minor's estate to the plaintiff for administration, under the supervision of the probate court of Pike county. The probate court having denied the relief prayed for, plaintiff appealed to the circuit court. Upon a hearing in that court, the prayer of the plaintiff's petition was denied and the judgment of the probate court affirmed. By the refusal of certain instructions asked on the part of the plaintiff, it appears the circuit court declared the proceeding to be a collateral attack upon the judgment of the probate court of Lincoln county. From this judgment, plaintiff prosecutes an appeal to this court.

Under our statute, the probate court of the county in which the minor is domiciled, is possessed of the power to appoint guardians and curators. Plaintiff insists that the minor, Etta Louise Jackson, was domiciled, after the death of her father, in the county of Pike, and that therefore he is the rightful curator of her

estate for the reason the probate court of Pike county alone was possessed of jurisdiction to make such appointment. On the other hand, the defendant insists that the minor's surviving parent, William A. Jackson, was a resident of the city of Troy, in Lincoln county, at the time of his death and even though the child was living at the time with its grandfather in Pike county, the probate court of Lincoln county was possessed of the power to appoint him curator for the reason the domicile of the parent is the domicile of the child. On this question, much testimony was introduced in the circuit court. It seems that plaintiff insisted, first, that if the minor's father, William A. Jackson, had acquired a residence in Missouri at all, it was at Louisiana in Pike county, and second, that whether he had acquired a residence or not, his child, Etta Louise, was actually domiciled in that county with its grandfather after the death of her father, and that therefore the jurisdiction of the probate court of Pike county rightfully attached. On the other hand, the defendant insisted that the city of Troy, in Lincoln county, was the domicile of William A. Jackson, and that the child, Etta Louise, was residing temporarily only with her grandfather in Pike county. From a careful perusal of all the testimony in the record, it appears to greatly preponderate in favor of the proposition that William A. Jackson had acquired a residence and was domiciled at Troy, in Lincoln county. However this may be, it appears the child was at the time, and had been for a considerable period theretofore, residing with her grandfather at Louisiana, under a promise given by her father to the grandparents that he would never remove her therefrom. The mother of the little child had departed this life some time before her husband and upon the death of William A. Jackson, the father, the grandfather, Charles H. Smith, with whom the child resided at Louisiana, was next of kin. To recite the facts in the record, it appears that William A. Jackson, a most excellent citi-

zen, had been reared at or near Troy, in Lincoln county. He was elected to and had served in the office of county clerk for that county. About that time, he married Miss Smith, daughter of Charles H. Smith, of Pike county. After his marriage, he and his wife boarded for a time with the family of his friend, Senator Avery, of Troy. He then purchased a home in Troy and kept house for a considerable period. His term of office as county clerk having expired, he removed to Texas and followed the vocation of traveling salesman. After this, he removed to England, Arkansas, and embarked in business. While residing at England, Arkansas, the little girl, Etta Louise, was born. Mrs. Jackson died the following day. Mr. Jackson brought her remains to her former home at Louisiana, Missouri, where she was buried. It seems Mrs. Jackson had requested, before her death, that her child should be given into the keeping of her friend, Mrs. Avery, of Troy. Immediately after the burial of his wife, Mr. Jackson communicated her request to Senator Avery with respect to the child. Mrs. Avery's health was very poor at the time and it seems one of her children was also ill. Senator Avery informed Mr. Jackson of these facts and suggested that under the circumstances, it would be impossible for Mrs. Avery to take upon herself the care of the infant. Mr. Jackson then called upon Mr. Charles H. Smith, his wife's father, at Louisiana, in Pike county, and Mrs. Smith, who was the stepmother of his wife, and requested them to take the child. They acceded to the request upon the condition that Mr. Jackson should not reclaim the child from them in future years. It was explained that they would necessarily become greatly attached to the child and they did not want to invite the pain and anguish which would result from severing these ties. It appears to be uncontroverted that Mr. Jackson agreed the child should always remain with them. The little girl was delivered into their keeping under this agreement when she was only three days

old, and has remained there ever since. Having thus arranged a good home for his baby, Mr. Jackson returned to England, Arkansas. About this time his health began to fail, and within a very few months thereafter, he disposed of his business in Arkansas and returned to Missouri. It appears he spent a considerable portion of his time at Troy, and also at Louisiana. While at Troy, he resided at the home of Mr. James A. Jackson, a cousin, who was engaged in the banking business there. While at Louisiana, in Pike county, he made his home at the residence of his wife's father, Mr. Charles H. Smith. The testimony on the part of the plaintiff tended to prove that Mr. Jackson talked about making his future home at Louisiana and residing with his wife's father in order to enjoy the society of his little girl. The testimony discloses that he thought somewhat of buying a home there, in which they should all reside; and further, he considered the advisability of building an addition to the home of his wife's father and buying an interest in a drugstore in the city of Louisiana. He did none of these things, however. It appears he was at Mr. Smith's residence a considerable portion of the time at different periods and called it home, at least when talking to members of the Smith family. On the part of defendant, numerous witnesses, residents of Troy, gave testimony to the effect that Mr. Jackson had claimed that city to be his home, and that he contemplated going into business and spending the remainder of his life there. It appears he endeavored to purchase an interest in a drugstore at Troy and that he also proposed to a Mr. Hall to go into partnership with him in the stock business, saying that he preferred to engage in something which would give him outdoor exercise because of the poor condition of his health. It appears, also, that during the summer, he attended two State conventions of the Democratic party, one at St. Joseph and one at Joplin, either as a delegate or as proxy for a delegate from Lincoln county. It seems

that he desired to vote in the Democratic primary in Lincoln county, and upon some one saying he was not a qualified voter, for the reason he had not resided in the State a year next preceding the general election, he advised with Senator Avery as to his right to vote and insisted that Troy, in Lincoln county, was his home. He purchased no property, however, and entered into no business. While in Troy during that summer, he took his meals at the hotel and roomed at the home of his cousin, Mr. James A. Jackson, which place he called home. From these and other facts and circumstances in proof, it appears the evidence greatly preponderates in favor of the proposition that Mr. Jackson had acquired a domicile at Troy, and that such was his domicile at the time of his death. Being in poor health, about the middle of the summer, Mr. Jackson took a trip to visit his sister, Mrs. Hutt, in Texas. To those persons with whom he conversed while in Texas, he spoke of Troy, Missouri, as his home. He died in August, 1904, while visiting his sister, Mrs. Hutt, at Terrell, Texas. It appears he had no children other than Etta Louise, and we gather from the testimony that his cousin, James A. Jackson, was his nearest living relative in Missouri. Prior to his death, he executed a will, by the provisions of which he bequeathed his estate, consisting of some personal property and about five thousand dollars in life insurance policies, then in the possession of his cousin, James A. Jackson, in the bank at Troy, to his little daughter. To this will, he annexed a codicil a few days before his death, by which he nominated his cousin, James A. Jackson, of Troy, executor of his estate and guardian of his daughter, Etta Louise. In this he also expressed a desire that his little daughter should continue to reside with her grandparents unless her guardian might otherwise direct; and that Mrs. Smith should receive ample compensation from his estate for the care and keep of the child. On September 5, 1904, James A. Jackson was appointed curator of the estate

of the minor, Etta Louise, by the probate court of
Lincoln county. The record of this appointment re-
cites that Etta Louise Jackson, a minor, seventeen
months of age, was then domiciled in Lincoln county,
and that her father and mother were both dead. Mr.
Jackson duly qualified as curator and took charge of the
minor's estate. On October 5th he was also appointed by
the same court as executor of the last will of William A.
Jackson and duly qualified as such. It appears that on
October 27, 1904, James A. Jackson filed his statement
in writing in the probate court of Lincoln county,
by which he relinquished his right to act as testamentary
guardian of the person of the minor, and that her
grandfather, Charles H. Smith, was appointed by that
court guardian of her person instead. Mr. Smith quali-
fied and entered upon the discharge of his duties as
such guardian. Afterwards it appears from the evi-
dence that James A. Jackson, the curator, departed this
life in the early part of the year 1905, and that on the
23rd day of February, 1905, such fact having been
made to appear in the probate court of Lincoln county,
that court appointed the defendant, William R. Young,
public administrator and ex-officio public guardian to
take charge of such estate as curator in his official ca-
pacity, etc. The defendant curator, Young, was dis-
charging his duties as curator under order of the pro-
bate court of Lincoln county at the time of the institu-
tion of this suit. It appears that thereafter, on August
11, 1905, the probate court of Pike county appointed
Dr. Parks L. Kabler as curator of the estate for the
minor, Etta Louise Jackson, and that he immediately
qualified as such. Almost a year thereafter, having
been thus appointed by the probate court of Pike coun-
ty, Dr. Kabler instituted this proceeding in the pro-
bate court of Lincoln county on July 24, 1906, by filing
his petition reciting the facts pertaining to his appoint-
ment; and further, that the minor was then and had
been at all times domiciled in Pike county. The petition

prays the probate court of Lincoln county to vacate
and set aside its order and judgment appointing the
defendant, William R. Young, curator of the estate
of the minor. The jurisdiction of the probate court
of Lincoln county is challenged thereby on the ground
that the minor was at all times after the death of her
father, domiciled in Pike county. The prayer of the
petition is to the effect that the appointment of de-
fendant Young be vacated and set aside, and the minor's
estate be given into the possession of the plaintiff and
transferred for administration under his appointment
in the probate court of Pike county. Since the appeal
was perfected to this court, the death of Dr. Parks L.
Kabler, the original plaintiff, has been suggested and
the cause now stands revived in the name of Charles H.
Smith, the grandfather, whom it appears was duly ap-
pointed on December 30, 1907, by the probate court of
Pike county as curator of the minor's estate, and after-
wards duly qualified as such.

NORTONI, J. (after stating the facts).—The juris-
diction of the probate court to appoint a guardian or
curator for a minor is fixed by the domicile of the
minor. [Lacey v. Williams, 27 Mo. 280; DeJarnet v.
Harper, 45 Mo. App. 415.] And as a general proposi-
tion, the domicile of the parent is the domicile of the
minor. [Marheineke v. Grothaus, 72 Mo. 204; Garrison
v. Lyle, 38 Mo. App. 558.] The domicile of the minor
is a matter *in pais* which the probate court must find
as a fact to support its jurisdiction in proceedings of
this character. [Cox v. Boyce, 152 Mo. 576; Johnson
v. Beasley, 65 Mo. 250.] It seems, however, that the
domicile of the parent may not necessarily always be the
domicile of the minor for the purpose of determining
the jurisdiction of the probate court, as in cases where
both parents are dead and the child is domiciled with
the grandparents, who are next of kin, and stand *in loco*

*parentis* to the minor. Or where the parents have wholly abandoned the child to the grandparents. In the case of Cox v. Boyce, 152 Mo. 576, it appears the mother of the minor was dead and the father had surrendered and committed the child to its grandfather in Lincoln county. In that case, both father and grandfather resided in the same county. After the child was committed to his care, the grandfather was duly appointed curator of its estate by the probate court of Lincoln county. The grandfather afterwards removed to Howell county. He was never discharged as guardian and curator by the probate court of Lincoln county. After having resided several years in Howell county, the grandfather applied to and was appointed by the probate court of Howell county as guardian of the child and curator of its estate, although the child's father continued to reside in Lincoln county. In a collateral attack upon the judgment of the Howell county probate court, by which the grandfather was appointed curator, the Supreme Court expressed the opinion that in view of the fact that the child's father had surrendered the minor to her grandfather, the latter stood *in loco parentis* toward her and therefore his residence in Howell county was the domicile of the child, and thus served to confer jurisdiction upon the probate court of that county to appoint a curator. Our statute (section 3478) declares the father, while living, and after his death or when there shall be no lawful father, then the mother, to be the natural guardian and curator of their child. This is merely declaratory of the rule which obtained at common law. [See 1 Blackstone's Com., 435; 2 Kent's Com., 220; Lamar v. Micou, 114 U. S. 218.] As a general proposition, the removal of the child from one county to another by its guardian does not operate to change the domicile of the child; and this is true even though both parents are dead and the guardian be the grandfather of the child. Such was the case of Marheineke v. Grothaus, 72 Mo. 204. Upon

a cursory reading, the doctrine of this case seems to conflict with the opinion expressed in Cox v. Boyce, 152 Mo. 576. By a more careful scrutiny, the cases may be distinguished by the fact that in Cox v. Boyce, it appeared the father had surrendered the child to the grandfather, and we conclude, abandoned it. The child's mother being dead and the father having abandoned or surrendered it to the grandparent, the grandparent, of course, as next of kin, stood *in loco parentis,* and hence his removal of the child to Howell county was the removal of its domicile, for the reason that he, although its guardian, having assumed the position of parent, determined the domicile of the child. Now in Marheineke v. Grothaus, 72 Mo. 204, it appears the domicile of the child was fixed by the later domicile of its parents, who died in St. Louis. The grandfather, who was a resident of Franklin county, qualified as guardian and curator under an appointment of the probate court of St. Louis county. Having thus qualified, the grandfather removed the child, not as parent but as guardian, to his home in Franklin county. The guardian grandfather afterwards died and the probate court of Franklin county appointed Koehring in his stead, while the probate court of St. Louis county appointed William Kelso as his successor. A contest having arisen between these curators appointed by the different courts concerning certain property of the child, the Supreme Court upheld the jurisdiction of the probate court of St. Louis county upon the theory that the domicile of the minor was within the jurisdiction of that court at the time of the original appointment and the domicile of the ward could not be changed by the act of the guardian in removing her to another county prior to attaining the age of fourteen years, at which age the ward might choose for herself. The proposition of law to be deduced from the case is that the guardian may not change the domicile of a child under fourteen years of age by the mere fact of removing it to another

county. On the other hand, the proposition of law to be deduced from Cox v. Boyce is to the effect that if the guardian who is the grandfather and next of kin, standing *in loco parentis* to the minor, removes the child from one county to another, it will operate to change the domicile of the child, even though he be its guardian as well as grandparent, identically, as in the case of a natural parent. The doctrine of this case is in accord with that which now quite generally obtains in the American courts to the effect that after the death of both parents, infants who take up their residence at the home of the grandparents and next of kin, in another State or county, will acquire such grandparent's domicile. [See Lamar v. Micou, 114 U. S. 218; In re Benton, 92 Iowa 200; Schouler's Domestic Relations (5 Ed.), sec. 303; 15 Amer. and Eng. Ency. Law (2 Ed.), 35.]

Now it appears that the minor in the present instance was placed in the home of her grandfather in Pike county when only three days of age; and this, too, under an agreement on the part of the father that the grandparents should retain her ever after. It is true this agreement was not obligatory on the part of the father as a matter of law. It was revokable at will on his part. [In re Scarritt, 76 Mo. 565.] And there is no doubt had the father died and the mother survived, the death of the father would have operated as a revocation of the promise and, *ipso facto,* transferred the domicile of the infant to that of the surviving mother. [DeJarnet v. Harper, 45 Mo. App. 415.] The mother of the infant having departed this life prior to the arrangement, the death of the father certainly would not operate to revoke it so as to change the domicile of the child from that of the grandfather, who was next of kin. Our statute (section 3482) authorizes the surviving parent to appoint a guardian for the minor by his last will, and we apprehend that William A. Jackson might have changed the domicile of the child from the home of its grandparents in Pike county to his for-

mer home in Troy by directions to the testamentary guardian to that effect in the will. He did not see fit to do this, however. On the contrary, he expressed his wishes to the effect that the child should continue to reside with its grandparents, unless the testamentary guardian, James A. Jackson, directed otherwise. James A. Jackson appeared in the probate court and declined to accept the trust of guardianship, and no change was made. It appeared the grandparents were most excellent people and that it was conducive to the best interests of the child that it should remain in their custody. Now under the circumstances of this case, the father having died without revoking his promise as to the future of the child, and it residing at the time with the grandparents, next of kin, we believe that instantly upon the death of the father, the grandfather assumed the position of parent, and that his domicile became the domicile of the child. [Lamar v. Micou, 114 U. S. 218; In re Benton, 92 Iowa 202; Schouler's Domestic Relations (5 Ed.), sec. 303; 15 Amer. and Eng. Ency. Law (2 Ed.), 35.]

Now, assuming that the minor, Etta Louise Jackson, was domiciled in Pike instead of Lincoln county, and that the Pike county probate court was possessed of jurisdiction to appoint a curator for her estate in the first instance, the important question for decision in the case is: can the judgment and order of the probate court of Lincoln county by which the defendant Young was appointed, be vacated and set aside at a subsequent term in this proceeding? By the refusal of instructions, the circuit court indicated this to be a collateral attack upon the judgment of the probate court of Lincoln county. We concur in that view. The probate courts of this State are no longer treated as inferior tribunals with limited jurisdiction; but on the contrary, they are regarded as courts exercising a general jurisdiction upon the matters committed to them by the statutes. Probate courts are possessed of orig-

inal and exclusive jurisdiction with respect to the
matter of guardians and curators of minors.  In part,
their right to proceed rests *in pais* and must be found
and determined as a matter of fact by the court when
proceeding to exercise its jurisdiction on a given sub-
ject.  The legislative authority has conferred power
upon the probate court of a county in which a minor
is domiciled, to appoint a guardian for its person or a
curator for its estate.  The rule is that where the fact
upon which the power of the court to act depends, is
referred by the lawmakers to be determined by the
court, a determination of that fact by such court is
conclusive and cannot be questioned in other than a
direct proceeding to that end.  And this is true even
though it found the fact erroneously.  Such fact is
*res adjudicata.*  [Johnson v. Beasley, 65 Mo. 250; Had-
ley v. Bernero, 103 Mo. App. 549; Cos v. Boyce, 152
Mo. 576; Grignon's Lessee v. Astor, 43 U. S. (2 How.)
319; Scofield v. Bohne, 169 Mo. 537, 24 Ency. Pl. and
Pr., 709, 717, 718, 766.]  It appears that several cases
have been entertained in this State in form here pre-
sented.  The question was not considered, however, in
any of them as to whether or not the attack was direct
or collateral.  In Lacey v. Williams, 27 Mo. 280, the
probate court of Pike county had appointed a curator
for the estate of three minors who resided in Cedar
county.  Their mother came into the probate court of
Polk county and moved the court to vacate its order to
that effect, for the reason the court was without juris-
diction.  The judgment was vacated in accordance
therewith.  It does not appear whether this motion was
filed at the term at which the order of appointment was
made, or at a subsequent term.  Of course a motion to
vacate a judgment filed at the term at which the judg-
ment was entered, is one form of a direct attack on the
judgment, and is always proper.  [15 Ency. Pl. and
Pr., 236.]  We must presume that Lacey v. Williams
was a case of that character; that is, nothing appear-

ing to the contrary in the opinion, the presumption is
that the motion 'was filed at the same term at which
the appointment of the curator was made and it was
therefore very properly sustained. This case has been
referred to frequently as a direct attack upon a judg-
ment. [Johnson v. Beasley, and Cox v. Boyce, supra.]
However, the learned judge in Lacey v. Williams de-
clared the judgment of the probate court void and
said it was subject to collateral attack. From these
remarks, it is to be presumed that there was something
on the record of the probate court which showed that
judgment to have been void. [Cox v. Boyce, 152 Mo.
576-582.] It may have been the record of the court
in Polk county evinced that the minors resided in Cedar
county. In such circumstances, of course, it appeared
on the face of the record that the probate court of
Polk county was without jurisdiction. Where the rec-
ord shows on its face the court was not possessed of
jurisdiction in the cause, the judgment is obviously
void. In such cases, it may be assailed in a collateral
proceeding or set aside at a future term by the same
court. [See Pettus v. McClenahan, 52 Ala. 55; Kohn
v. Haas, 65 Ala. 478; 17 Amer. and Eng. Ency. Law
(2 Ed.), 825, 926; 15 Ency. Pl. and Pr., 237. However,
where the judgment is fair on its face, as in this case,
it may not be thus assailed at all in a collateral pro-
ceeding. [Cox v. Boyce, 152 Mo. 576; Hadley v. Ber-
nero, 103 Mo. App. 549; Johnson v. Beasley, 65 Mo.
250; Van Fleet, Col. Attacks, sec. 3.] Nor in any man-
ner at a subsequent term other than a direct proceed-
ing to that end. [15 Ency. Pl. and Pr., 216.] In De
Jarnet v. Harper, 45 Mo. App. 415, the probate court
of Johnson county appointed a guardian for a minor
whose domicile was in Bates county. The probate
court of Bates county, in which the minor's domicile was
as a matter of law, appointed another person guardian.
The Bates county guardian instituted a proceeding in
the probate court of Johnson county at a subsequent

term, like the proceeding here, seeking to set aside the judgment and order of the probate court of Johnson county appointing the guardian. On appeal to the circuit court of Johnson county, the judgment of the Johnson county probate court was set aside as prayed, and upon an appeal to the Kansas City Court of Appeals, that judgment was affirmed. The question as to whether or not the proceeding was a direct or collateral attack upon the judgment of the probate court of Johnson county was not considered. See, also, the case of Garrison v. Lyle, 38 Mo. App. 558, by the same court to the same effect. These cases may be pointed to as precedents for this proceeding. We are persuaded, however, that had the question of direct or collateral attack been brought forward, the Court of Appeals would have declared the proceeding in each of those cases a collateral attack and given judgment accordingly. It is to be observed that in the opinion in the De Jarnet case, Judge GILL speaks of the judgment of the Johnson county probate court as *void* and treats it accordingly. The court was no doubt misled by the remarks in Lacey v. Williams as to the judgment in that case being void and therefore subject to collateral attack. Now it is highly important that proceedings had in the probate courts should be protected by the law, as titles and vast interests which frequently flow therefrom may be overthrown and destroyed if such judgments are not accorded the usual sanctity which obtains with respect to the judgments of courts of superior jurisdiction. Suppose for instance, that this minor had owned valuable real estate in Lincoln county, and that it had been sold under an order of the probate court, as authorized by statute. In such circumstances, should parties be permitted to come into that court years after and by introducing new proof on a question of fact, overthrow the jurisdiction, vacate the prior proceedings, and destroy a title which emanates from a judgment fair on its face? We are inclined

to the contrary. The courts should assume and maintain a firm position in such cases, and countenance no proceeding which would tend to establish a precedent for such an unwonted invasion of the rights of property. Any proceeding authorized by law to vacate a judgment of a court of competent jurisdiction, is a direct attack thereon. [Van Fleet, Col. Attacks, sec. 2.] While a collateral attack is an attempt to avoid, defeat, vacate or deny the force and effect of a judgment in some manner not authorized by law. [Van Fleet, Col. Attacks, sec. 3.] It is urged that as no appeal was allowable from the judgment of the probate court of Lincoln county appointing the defendant Young as curator and that as this mode of direct attack was thereby precluded, the court should not treat the present proceeding as a collateral attack. It is said the question ought not be regarded as *res adjudicata,* as no appeal from the order of appointment could be had. To the proposition that an appeal is not allowable in such cases, Looney v. Browning, 112 Mo. App. 195, is cited. The case cited is certainly a sound exposition of the law. However that may be, it does not preclude the right of appeal from the refusal of the probate court to set aside its judgment. The statutes on appeal, touching the matter of guardians and curators, are *in pari materia* with like statutes touching appeals from probate courts under the administration law. Although an appeal will not lie from the order of a probate court appointing an administrator, it has been several times decided that an appeal will lie from the refusal of that court to revoke such appointment. [See Donaldson v. Lewis, 7 Mo. App. 403; Owens v. Link, 48 Mo. App. 534.] By analogy of reasoning, it is entirely clear that an appeal is allowable from a judgment of a probate court refusing to vacate the appointment of a curator. This opinion was expressed by this

court heretofore. [See Looney v. Browning, 112 Mo. App. 195, 199.] Had the proper parties moved the probate court of Lincoln county to vacate its order appointing defendant Young during the term at which the appointment was made, and their motion been refused, an appeal would lie from that judgment. Indeed, the very case we are now considering is one where the appeal is prosecuted from a refusal of the probate court to set aside an order appointing a curator. The important fact, however, which precludes this proceeding from being a direct attack on that judgment is that it was filed at a subsequent term of the court instead of at the term at which the judgment was given. However, the judgment of a court of general jurisdiction is conclusive on all matters within the adjudication unless vacated by a competent proceeding. An appeal, of course, when authorized, is competent as a direct attack on the judgment. If no appeal is authorized then it is presumed that the lawmakers intended none should be had, and that the judgment should remain conclusive unless vacated by a direct attack in another competent form of proceeding. [Grignon's Lessee v. Astor, 43 U. S. (2 How.) 319, 340.]

Besides an appeal prosecuted in due course and the several motions authorized by law and practice during the term, the only modes of direct attack at a subsequent term on a prior judgment, for which authority may be found in our books in any manner resembling the proceeding in this instance, are writs of error *coram nobis*, the common law *audita querela*, a motion to vacate for fraud in the act of procuring the judgment, and the bill to review on equitable grounds. The facts in judgment do not bring the matter within the scope of any of these remedies. The writ *coram nobis* will lie only in cases where the court has proceeded upon the assumption that a fact existed which was material to its right to proceed when the fact did not exist at all. [See Cross v. Gould, 131 Mo. App. 585.] No such

case is presented here, because instead of it being a proceeding where the court assumed the fact conferring jurisdiction existed, the matter of the minor's domicile was one *in pais* which it must find from extrinsic facts in evidence. Therefore, instead of it being a case reviewable by *coram nobis* at a subsequent term of the court in which the record lies, it is a case where the court, in the exercise of its jurisdiction, pronounced an erroneous conclusion of law on the facts and is reviewable only as such. [Grignon's Lessee v. Astor, 43 U. S. (2 How.) 319, 340; Hadley v. Bernero, 103 Mo. App. 549, 557, 558.] Now the common law writ of *audita querela* is one by which a proceeding may be had by a judgment defendant in the court wherein the record lies, to review the judgment on account of some matter occurring after judgment, amounting to a discharge of its obligation. [Bouvier's Law Dictionary; Fisher v. Johnson, 74 Mo. App. 64.] It is obvious the facts in judgment do not present a case within the scope of that ancient writ. There is no suggestion that the judgment was concocted or procured in fraud, and therefore the modern motion authorized by law to vacate such judgment at a subsequent term, does not obtain. [Downing v. Still, 43 Mo. 309; Cross v. Gould, 131 Mo. App. 585.] Aside from the question as to whether or not the probate court is possessed of sufficient equity jurisdiction to entertain a bill in equity to review and vacate a judgment, it is sufficient to say that none of the grounds conferring equity jurisdiction, such a fraud, accident, mistake or surprise, are present or relied upon here.

We, therefore, conclude that this proceeding, instituted at a subsequent term of the probate court, seeking to vacate and set aside its prior judgment, is not authorized by law and is therefore a collateral, as distinguished from a direct, attack thereon. Entertaining this view, the judgment will be affirmed. It is so ordered. *Reynolds, P. J.,* and *Goode, J.,* concur.